# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

NORTHERN ARAPAHO TRIBE, )
)
    Plaintiff-Appellee-Cross-Appellee, )
)
    vs. )   No. 02-8026 / 02-8031
)
STATE OF WYOMING and GOVERNOR )
JAMES GERINGER, his agents, )
employees and successors, )
in their official capacities, )
)
    Defendants-Appellants-Cross-Appellees. )

_____

**On Appeal from the United States District Court
for the District of Wyoming**

The Honorable Alan B. Johnson
District Judge

D.C. No. 00-CV-221-J
_____

## PETITION
## OF APPELLANT STATE OF WYOMING ET AL.
## FOR REHEARING OR REHEARING EN BANC
_____

For the Appellant:                                            For the Appellee:

HON. PATRICK J. CRANK                     Andrew W. Baldwin
Wyoming Attorney General                     Berthenia S. Crocker

JOHN W. RENNEISEN                           Attorneys at Law
Deputy Attorney General                         Baldwin & Crocker, P.C.

CRAIG E. KIRKWOOD                            337 Garfield Street
Senior Assistant Attorney General             P.O. Box 1229
Office of the Wyoming Attorney General        Lander, Wyoming 82520
Herschler Building, 1st Floor West                (307) 332-3385
Cheyenne, Wyoming 82002
(307) 777-3798

## STATEMENT OF ISSUE OF EXCEPTIONAL IMPORTANCE

The decision of the three judge panel misinterprets the Indian Gaming Regulatory Act, 25 U.S.C. §2701 et seq., (hereinafter "IGRA"), is inconsistent with decisions in other circuits, and will permit the Tribe to engage in conduct which is criminal under Wyoming law and therefore violates strong public policy.

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATUTES AND OTHER AUTHORITIES. . . .. . . . . . . . . . . . . . . . . . . . . . . . . ii-iii

PRIOR RELATED APPEALS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF ISSUE OF EXCEPTIONAL IMPORTANCE . . . . . . . . . . . . . . . . . .2

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.    This appeal presents a question of exceptional importance: the decision of the three judge panel misinterprets IGRA, is inconsistent with decisions in other circuits, and will permit the Tribe to engage in conduct which is criminal under Wyoming law and therefore violates strong public policy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STANDARD FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

JUDGMENT. . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . app.

# **TABLE OF AUTHORITIES**

**TABLE OF CASES:**

*California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987) . . . . . . . . . . . . . . . 8

*Cheyenne River Sioux Tribe v. South Dakota*, 3 F.3d 273, 279 (8th Cir. 1993)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Coeur d'Alene Tribe v. State of Idaho*, 842 F.Supp. 1268, 1279-1280 (D.Idaho 1994),
*aff'd* 51 F.3d 876 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lac du Flambeau Band of Lake Superior Chippewa Indians v. State of Wisconsin, et al*,
770 F.Supp. 480 (W.D. Wis. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mashantucket Pequot Tribe v. State of Connecticut et al.*, 913 F.2d 1024, 1031-1032 (2nd Cir.
1990), *appeal dismissed*, 957 F.2d 565 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . 11- 12

*Rumsey Indian Rancheria of Wintun Indians v. Wilson*, 64 F.3d 1250 (9th Cir. 1994)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Santa Ynez Board of Chumash Mission Indians of the Santa Ynez
Reservation, California*, 33 F.Supp. 2d 862, 863 (1998) . . . . . . . . . . . . . . . . . . . . . . . 10

*Yselta Del Sur Pueblo v. Texas*, 79 F.Supp.2d 708 (W.D. Tex. 1999) . . . . . . . . . . . . . . 12

**STATUTES:**

18 U.S.C. § 1166 (a) (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

25 U.S.C. § 1300, Restoration Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Indian Gaming Regulatory Act, 25 U.S.C. §2701 et seq. . . . . . . . . . . . . . . . . . . . . . 2 - 13

25 U.S.C. §2710(d)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

25 U.S.C. §2710(d)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Wyo.Stat. § 6-7-101(a)(iii)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Wyo.Stat. §6-7-101(a)(iii)(E) ................................................ 7

Wyo.Stat. §6-7-101(a)(iii)(F) ................................................ 7

Wyo.Stat. §6-7-101(a)(iv) ................................................... 7

Wyo.Stat. §6-7-101(a)(viii) .................................................. 7

Wyo.Stat. §6-7-101(a)(x) ................................................. 7, 8

Wyo.Stat. §6-7-102 ........................................................ 7

Wyo.Stat. §6-7-103 ........................................................ 7

Wyo.Stat. §11-25-101 et. seq. ............................................... 7

**OTHER AUTHORITIES:**

S.REP. 100-446 at 6, 13-14 (1988); 1988 U.S.C.C.A.N. 3071 ................. 8, 9

Rule 35, Federal Rules of Appellate Procedure ................................ 3

Rule 40, Federal Rules of Appellate Procedure ................................ 3

XIX Land and Water Law Review: Goodbye 3 Card Monte: The Wyoming Criminal Code of 1982, 509, 571 (1984) ........................................... 9

## PRIOR RELATED APPEALS

On November 23, 2004 a three judge panel issued its opinion in this case.

## STATEMENT OF JURISDICTION

A.  The District Court's subject matter jurisdiction was established pursuant to 25 U.S.C. §2710(d)(7).

B.  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291.

C.  This petition for rehearing or rehearing en banc is made pursuant to Rules 35 and 40, Federal Rules of Appellate Procedure.

## STATEMENT OF THE ISSUE

I.  Does this appeal present a question of exceptional importance: Does the decision of the three judge panel misinterpret IGRA in a manner inconsistent with the decisions in other circuits, and so as to permit the Tribe to engage in conduct which is criminal under Wyoming law and in violation strong public policy?

## STATEMENT OF THE CASE

### Course of Proceedings

In May 2000, the Northern Arapaho Tribe (hereinafter "the Tribe") wrote to then Wyoming Governor Geringer requesting negotiation on Class III gaming pursuant to the provisions of the Indian Gaming Regulatory Act. (APLT APP, pp. 9,12 and 37). On June 6, 2000, then Attorney General Gay Woodhouse replied explaining that the State was in the process of putting together a negotiating team. (APLT APP, p. 12).

Representatives of the Tribe and the State met personally on July 24, October 4 and October 25, 2000 to discuss gaming issues. (APLT APP, pp. 9 and 37). A draft of a compact was delivered to the State.

In November 2000, the State provided a letter in response to the Tribe's request for

the State's position on scope of gaming subject to negotiation under IGRA and the types of gaming Wyoming law permits. (APLT APP, pp. 22-25). The Tribe sent a letter to the State outlining its position on many subjects, including the scope of gaming subject to negotiation. (APLT APP, pp. 26-24 and p. 38).

On November 21, 2000, the Tribe filed its Complaint alleging the State refused to negotiate in good faith for a Class III gaming compact. (APLT APP, pp. 8-11). The State filed its Answer and Counterclaim. (APLT APP, pp. 35-49). In January 2001, the Tribe filed its Motion for Judgment on the Pleadings. (APLT APP, pp. 49-50). The State filed its Response to the Tribe's Motion for Judgment on the Pleadings.

On March 12, 2001, a hearing was held on the Tribe's Motion for Judgment on the Pleadings. (APLT APP, pp. 51-119). On February 6, 2002, the district court entered its Order Partially Granting Plaintiff's Motion for Judgment on the Pleadings. (APLT APP, pp. 120-144). On the same date, the district court entered the Judgment on its Order Partially Granting Plaintiff's Motion for Judgment on the Pleadings. (APLT APP, p. 145).

On March 8, 2002, the State filed its Notice of Appeal. (APLT APP, pp. 167-168). The Tribe filed its Cross Appeal.

On November 23, 2004, a three judge panel (hereinafter "the panel") of this Court issued an opinion affirming in part, reversing in part, and remanding for further proceedings in accordance with its opinion. (Hereinafter "the panel's decision").

4

## STATEMENT OF THE FACTS

The Tribe sought to negotiate a Class III gaming compact with the State of Wyoming under the provisions of IGRA and notified the State of its desire on May 15, 2000. (APLT APP, pp. 9, 20 & 37). The State responded by assembling a negotiating team and the parties personally met on three (3) occasions over a period of three (3) months. (APLT APP, pp. 9 & 37). The Tribe requested that the State declare its position regarding the types of gaming permitted by Wyoming law and areas subject to negotiation under IGRA. The Tribe received a written statement from the State dated November 8, 2000. (APLT APP, pp. 22-25).

The Tribe then filed its Complaint on November 21, 2000, one hundred eighty-six (186) days after it had first notified the State of its desire to enter negotiations for a gaming compact and only one hundred eighteen (118) days after its first meeting with representatives of the State and less than two weeks after the Tribe's letter of November 9, 2000, stating they were "committed to a serious effort to reach a compact before the deadline." (APLT APP, pp. 8-11, 34 & 38). The Complaint requested a finding that the State had failed to negotiate in good faith on the subject of a Class III gaming compact. (APLT APP, pp. 10-11).

The Tribe then filed its Motion for Judgment on the Pleadings on January 11, 2001, and the district court partially granted the Tribe's Motion for Judgment on the Pleadings on February 6, 2002. (APLT APP, pp. 49-50). The district court found that the State had correctly refused to negotiate on the subject of gaming machines and casino-

style gambling as these are prohibited under Wyoming law. (APLT APP, pp. 120-141). However, the court also found that calcutta and parimutuel wagering were permitted under Wyoming law and thus the State had to negotiate over the "full gamut" of calcutta and parimutuel wagering. (APLT APP, pp. 142-144). The district court also found that the State had not negotiated in good faith on calcutta and parimutuel wagering and, thus, ordered the parties to complete a compact within sixty (60) days. (APLT APP, pp. 145-146). No evidence was submitted by the parties other than the attachments to the Complaint. (APLT APP, pp. 12-34).

## SUMMARY OF THE ARGUMENT

This appeal presents a question of exceptional importance. The decision of the three judge panel misinterprets IGRA, is inconsistent with decisions in other circuits, and will permit the Tribe to engage in conduct which is criminal under Wyoming law and therefore violates strong public policy.

## STANDARD FOR REVIEW

A Petition for Rehearing requires that the court overlooked or misapprehended important laws or facts. A Petition for Rehearing En Banc must present a question of exceptional importance. A panel decision on an issue of first impression in the Tenth Circuit which misinterprets the IGRA, in a manner inconsistent with decisions in other circuits, and allows Class III gambling in contravention of long-standing state public policy, presents such a question.

**ARGUMENT**

The decision of the three judge panel misinterprets IGRA, is inconsistent with the decisions in other circuits, and will permit the Tribe to engage in conduct which is criminal under Wyoming law and therefore violates strong public policy.

The three judge panel concluded that Wyoming's statutory law on gambling is merely regulatory and not prohibitory. Although Wyoming statutory law may be regulatory with respect to calcutta and parimutuel betting, (Wyo. Stat. §§ 6-7-101(a)(iii)(F) and 11-25-101 et seq.), it is prohibitory regarding games involving the use of gambling devices, professional gambling and slot machines. (Wyo. Stat. §§ 6-7-101(a)(iv), 6-7-101(a)(viii), 6-7-101(a)(x), 6-7-102 and 6-7-103).

Casino gambling involves both banking and non-banking games as well as slot machines. Banking games include games such as roulette, blackjack, craps, baccarat and keno as well as others. Those games are prohibited because they involve the use of "gambling devices" which are strictly forbidden by Wyoming law. (Wyo. Stat. § 6-7-101(a)(iv)). Those games are further prohibited because the games involve "professional gambling." The participant in each of those games has a lesser chance of winning and a greater chance of losing than the bank because of the nature of the odds for each game. (Wyo. Stat. § 6-7-101(a)(viii)). On the other hand, a game such as poker, a non-banking game, is permitted so long as it is incidental to a bona fide social relationship and no participant is involved in professional gambling. (Wyo. Stat. § 6-7-101(a)(iii)(E)). The banking games mentioned above are not permitted in the social setting because each

7

involves professional gambling. Against the banking participant the other participants have a lesser chance of winning and a greater chance of losing because of the nature of the game. A slot machine may only be used by its owner, in his residence, for amusement purposes and only if the machine is an antique gambling device as defined by Wyoming law. (Wyo. Stat. § 6-7-101(a)(x)). The panel, by concluding that Wyoming law is merely regulatory, then misinterprets IGRA to say that Wyoming must negotiate a compact permitting all forms of Class III gaming.

In a decision handed down prior to the enactment of IGRA, the United States Supreme Court held that Indian tribes have a right to conduct gambling on Indian lands without state regulation if those lands are located within a state which does not prohibit, but merely regulates gaming activities. *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 209 (1987).

When enacting IGRA, Congress was mindful of the principles of the *Cabazon* decision. S. REP. 100-446 at 6 (1988); 1988 U.S.C.C.A.N. 3071, 3076. The Senate Committee report set forth a number of the areas of concern to the Committee including state's interests in the interplay of such gaming with the state's public policy, safety, as well as impacts on the state's regulatory system and its economic interests. S.REP. at 13 (1988), 1988 U.S.C.C.A.N. 3071, 3083. The Committee recognized that the terms of each compact might vary extensively depending on the type of gaming, its location, and the previous relationship between the tribe and state. They also recognized that some of the issues subject to negotiation should include licensing issues, days and hours of

operation, wager and pot limits, types of wagers and size and capacity of the proposed facility, as well as allocation of jurisdictional responsibilities between the tribe and state. S.REP. 100-446 at 13-14 (1988), 1988 U.S.C.C.A.N. 3071, 3083-84.

Under IGRA, Class III gaming is "lawful on Indian lands only if such activities are ...(B) located in a state that permits *such gaming* for any purpose by any person, organization, or entity..." 25 U.S.C. §2710(d)(1)(B). (Emphasis added). In another provision of IGRA, Congress said: "all State laws pertaining to the licensing, regulation, or prohibition of gambling, including but not limited to criminal sanctions applicable thereto, shall apply in Indian country in the same manner and to the same extent as such laws apply elsewhere in the State." 18 U.S.C. §1166(a) (1988).

In this case the district court found that Wyoming statutory law on Class III gambling was prohibitory except as to parimutuel and calcutta betting. (APLT APP, pp. 120-144). The panel decision disagreed with and reversed that portion of the judgment below and has remanded this case. The panel's decision will open Wyoming to all forms of Class III gaming under any compact with the Tribe.

Wyoming's statutory law has been prohibitory of gambling since Territorial times. In 1982 the Wyoming Legislature, in an attempt to revise and modernize its Criminal Code, borrowed statutory language on gambling from the State of Colorado. XIX Land and Water Law Review: Goodbye 3 Card Monte: The Wyoming Criminal Code of 1982, 509, 571 (1984). The basic policy is prohibitory of commercial and professional gambling, with the exceptions of parimutuel and calcutta betting on limited events. These

9

exceptions do not transform Wyoming's public policy to a permissive, regulatory scheme. Wyoming has no centralized agency to oversee or regulate gambling. The result of the panel's decision carries significant impacts to the criminal justice and social service resources of state and local government.

The panel's decision is one of first impression in this Circuit and conflicts with decisions from all other Circuits. The Eighth Circuit has decided that "(t)he 'such gaming' language of 25 U.S.C. § 2710(d)(1)(B) does not require the state to negotiate with respect to forms of gaming it does not presently permit." *Cheyenne River Sioux Tribe v. South Dakota*, 3 F.3d 273, 279 (8th Cir. 1993). This interpretation of IGRA does not compel Wyoming to negotiate with the Tribe for Class III gaming beyond parimutuel and calcutta wagering. (This was the precise finding of the district court below in this case). (APLT APP, pp. 138-142). Similarly, the Ninth Circuit has ruled that California is not required by IGRA to negotiate compacts which permit games not permitted and thus prohibited under state law. *Rumsey Indian Rancheria of Wintun Indians v. Wilson*, 64 F.3d 1250 (9th Cir. 1994); (See also *Coeur d'Alene Tribe v. State of Idaho*, 842 F.Supp. 1268, 1279-1280 (D.Idaho 1994), *aff'd* 51 F.3d 876 (9th Cir. 1995); *United States v. Santa Ynez Board of Chumash Mission Indians of the Santa Ynez Reservation, California*, 33 F.Supp. 2d 862, 863 (1998). The panel's decision attempts to avoid this conflict with sister circuits by saying that Wyoming's statutory scheme is regulatory as opposed to prohibitory and therefore under IGRA Wyoming must negotiate a compact for all forms of Class III gaming. However, an examination of the

cases relied upon by the panel reveals that Wyoming's law is far more prohibitory even than the laws of the states as reflected in those cases. Wyoming does not sponsor or permit any form of state or multi-state lottery. With the exception of bona fide social relationship gaming, no form of casino gaming is permitted in Wyoming; the state is not regulating, but prohibiting casino gaming and slot machines. Bona fide social gambling is not "such gaming" under IGRA as will subject a state to negotiations for all Class III gaming by an Indian tribe.

The panel's decision describes something called the "Wisconsin" analysis under which if a state permits any form of Class III gaming its laws are said to be regulatory, not prohibitory, and it must therefore negotiate to permit all forms of Class III gaming. The panel cites *Lac du Flambeau Band of Lake Superior Chippewa Indians v. State of Wisconsin, et al,* 770 F.Supp. 480 (W.D. Wis. 1991), *appeal dismissed*, 957 F.2d 565 (7th Cir. 1992). The analysis and interpretation of IGRA by this federal district court has not been reviewed by the Seventh Circuit, nor has the interpretation been adopted by any other court until the panel's decision.

The panel placed further reliance on *Mashantucket Pequot Tribe v. State of Connecticut et al.,* 913 F.2d 1024, 1031-1032 (2nd Cir. 1990), for its analytic approach to IGRA. However, at issue in *Mashantucket Pequot* was the tribe's attempt "to expand its gaming activities to include class III games of chance, *such as those activities permitted by Connecticut law* for certain nonprofit organizations during 'Las Vegas nights'." *Id.* at 1026 (Emphasis supplied). The court did not conclude that because Connecticut law

11

permitted any form of Class III gaming that the tribe could conduct all forms of Class III gaming. Wyoming law permits charities to engage in raffles, bingo and pull-tabs, nothing more. Wyo. Stat. § 6-7-101 (a)(iii)(D).

Finally, the panel cites *Yselta Del Sur Pueblo v. Texas*, 79 F.Supp.2d 708 (W.D. Tex. 1999), for its interpretation of IGRA. This case was clearly not decided under IGRA. *Id*. at 709-710. Rather, the case dealt only with the state attorney general's legal authority to sue the tribe. The opinion points out that IGRA does not apply to Indian tribes in Texas as those tribes are subject to special legislation called the Restoration Act, 25 U.S.C. §1300 et seq., by which Congress expressly incorporated Texas state gambling laws for application on these reservations.

## CONCLUSION

The panel's decision misapprehends the long-standing, strong prohibition of Class III gambling in Wyoming. The panel's decision is contrary to interpretations of IGRA in the Second, Eighth and Ninth Circuit Courts of Appeal. This case presents an issue of exceptional importance which should be decided by the Tenth Circuit Court of Appeals sitting en banc.

## STATEMENT REGARDING ORAL ARGUMENT

Counsel respectfully requests oral argument in this matter on the grounds and for the reason that the issues presented are ones of first impression and involve unique questions to be resolved under IGRA.

Respectfully submitted this 7th day of December, 2004.

        S/Attorney
_____

HONORABLE PATRICK J. CRANK
Attorney General of the State of Wyoming


        S/Attorney
_____

JOHN W. RENNEISEN
Deputy Attorney General


        S/Attorney
_____

John Rossetti
Senior Assistant Attorney General


        S/Attorney
_____

Craig E. Kirkwood
Senior Assistant Attorney General
State of Wyoming
Herschler Building, 1st West
Cheyenne, WY 82002
(307) 777-5457

ATTORNEYS FOR APPELLANTS

## **CERTIFICATE OF SERVICE**

I hereby certify that I have caused a true and correct copy of the above and foregoing to be sent by First Class, postage prepaid, United States mail, on this 7th day of December, 2004, addressed to the following individuals:

Andrew W. Baldwin
Berthenia S. Crocker
Baldwin & Crocker, P.C.
P.O. Box 1229
Lander, WY 82520-1229

                S/Attorney
                Craig E. Kirkwood